## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **JAMES REID,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | |
| | § | **W-17-CA-249-RP** |
| **LORIE DAVIS, Director,** | § | |
| **Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Doc. 2); Respondent's Answer (Doc. 9); Petitioner's Reply (Doc. 11); Respondent's Response to the Reply (Doc. 14); and Petitioner's Sur-Reply (Doc. 16). Petitioner James Reid ("Petitioner") is represented by counsel and has paid the requisite filing fee. Petitioner is presently in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ"). For the reasons set forth below, the undersigned finds that Petitioner's Application for Writ of Habeas Corpus should be denied.

## STATEMENT OF THE CASE

### A.    Petitioner's Criminal History

The Director has lawful and valid custody of Petitioner pursuant to three judgments and sentences of the 54th Judicial District Court of McLennan County, Texas, in cause number 2012-672-C2. *Ex parte Reid*, Appl. No. 87,073-01 at 177-186. Petitioner was charged by indictment with three counts of indecency with a child by contact. *Id.* Petitioner pleaded not guilty and proceeded to

trial. *Id.* A jury found Petitioner guilty as alleged in the indictment and sentenced Petitioner to sixteen years' imprisonment as to each count. *Id.* The sentencing judge ordered the sentences to run consecutively. *Id.*

The Tenth Court of Appeals of Texas affirmed Petitioner's conviction in a memorandum opinion issued on October 30, 2015. *Id.* at 188. The Texas Court of Criminal Appeals subsequently refused Petitioner's Petition for Discretionary Review ("PDR") on March 23, 2016. Petitioner challenged his conviction in a state application for habeas corpus relief. His first application, WR-87,073-01, was dismissed for non-compliance on July 19, 2017. On September 13, 2017, the Texas Court of Criminal Appeals withdrew its prior order dismissing this application for failing to comply with the rules of appellate procedure and entered an order denying the application based both on the trial court's findings and its own review of the record.[1] (Doc. 10-25). Petitioner filed the instant federal Application on September 20, 2017. (Doc. 2).

**B.    Petitioner's Grounds for Relief**

The Court understands Petitioner's federal Application to allege the following grounds for relief:

1.    Petitioner's trial counsel rendered constitutionally ineffective assistance for "opening the door" to the evidence of Petitioner's prior sexual abuse conviction;

2.    Even if trial counsel did not truly open the door to the evidence of Petitioner's prior conviction, counsel was ineffective for failing to make the proper objections to preserve the claim that the prior conviction was improperly admitted for appeal; and

---

[1] The record further reflects that Petitioner also filed WR-87,073-02 on September 13, 2017. On November 8, 2017, the Tenth Court of appeals denied the application without written order.

3.    Petitioner's trial counsel was ineffective for failing to make an "offer of proof" as to threats made by the complainant to "get" Petitioner.

(Doc. 2-1).

## RELEVANT LAW

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which governs the case at hand,[2] "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). In short, the AEDPA seeks "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, a habeas petitioner under the AEDPA has the burden to prove his entitlement to its relief. *Montoya*, 226 F.3d at 404. In carrying that burden, the AEDPA dictates:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated *on the merits* in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). By its plain terms, the applicability of § 2254(d)(1)-(2) is limited to those claims which were adjudicated "on the merits in state-court proceedings." 28 U.S.C.

---

[2] The AEDPA governs all petitions for habeas corpus filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The Petition in this case was filed on September 20, 2017.

§ 2254(d). The term of art "on the merits" refers to "the court's disposition of the case—whether substantive or procedural." *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). As the Texas Court of Criminal Appeals has noted, under Texas law, denial of a state habeas petition, rather than dismissal, indicates that the state-court's resolution of the petitioner's claims was a substantive adjudication "on the merits." *Salazar v. Dretke*, 419 F.3d 384, 398–99 (5th Cir. 2005); *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits.").

A decision is contrary to clearly established federal law, thus satisfying § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Alternatively, a habeas petitioner may demonstrate that a state-court decision was an unreasonable application of federal law under § 2254(d)(1) "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

However, to be unreasonable, a state court's decision must be more than merely incorrect. *See Gardner v. Johnson*, 247 F.3d 551, 559 (5th Cir. 2001). A reversal is not required unless the "state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.' " *Id.*; *see Montoya,* 226 F.3d at 404 (5th Cir. 2000) (noting that the standard for federal habeas relief is one of objective reasonableness); *Neal v. Puckett*, 286 F.3d 230, 244-47 (5th Cir. 2002) (holding that under AEDPA, a state court's conclusion of lack of

prejudice, although incorrect, was not an unreasonable application of clearly established federal law).

Additionally, in reviewing a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and a petitioner "shall have the burden of rebutting the presumption of correctness by *clear and convincing evidence*." 28 U.S.C. § 2254(e)(1) (emphasis added). Moreover, where the petitioner:

> has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that:
>
>> (A) the claim relies on--
>>
>>> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Consequently, in the state courts, a petitioner "must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met." *Williams*, 529 U.S. at 437.

### B.    Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not

> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make
> both showings, it cannot be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. In deciding whether counsel's performance was deficient, the Court applies a standard of

objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be

highly deferential. *Id.* at 686-689. "A fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

*Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." *Id.* (citation omitted). Ultimately, the

focus of inquiry must be on the fundamental fairness of the proceedings whose result is being

challenged. *Id.* at 695-97. Accordingly, in order to prevail on a claim of ineffective assistance of

counsel, a convicted defendant must show that (1) counsel's representation fell below an objective

standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. *Id.* at 687. The test for

federal habeas purposes, however, is not whether [Petitioner] made that showing. Instead, the test

is whether the state court's decision–that [Petitioner] did not make the *Strickland*-showing–was

contrary to, or an unreasonable application of, the standards, provided by the clearly established

federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).

## ANALYSIS

### A.    Factual and Procedural Background

Petitioner was found guilty of three counts of indecency with a child by contact. The child, S.M., was the daughter of Soledad Reid, Petitioner's live-in girlfriend at the time. S.M. lived with Petitioner, Soledad, J.R. (S.M.'s younger step-sister), J.M. (Soledad's child from a previous relationship), and M.R. (Petitioner's son from a previous relationship) from approximately age 13 to 17. S.M. testified that, during this time, Petitioner would touch S.M. on her chest in the living room of their home, and, at times, Petitioner would touch S.M.'s vagina both over and under her clothing. S.M. further testified that, on one occasion, she was made to touch Petitioner's penis. S.M. testified that the touching occurred when Soledad was at work and J.R. was at school or in another room. S.M. moved out of Petitioner's home in 2010 and made her outcry several months later, on the day that Soledad and Petitioner married.

At trial, Petitioner was represented by Douglas Henager and Scott Peterson. Prior to trial, the judge granted a motion in limine excluding testimony relating to Petitioner's prior conviction for sexual abuse that occurred in New York in 1990, although the order in limine was later lifted during the testimony of defense witness Venitta Swinnie. At trial, the prosecution made its case on the testimony of the following witnesses: Wendi Milliman (S.M.'s step-mother), Robert Milliman (S.M.'s father), Louise Finkinbinder (a grandmother figure to S.M. and S.M.'s outcry witness), George Davis (a Child Protective Services investigator who worked the police referral in regard to the case), Waco Police Detective Melissa Malone (the detective who took statements from S.M. and

Robert Milliman regarding the outcry), S.M., and Dr. William Lee Carter (a psychologist who testified regarding sex offenders and victim response to sexual abuse).

The defense built its case on two theories: first, that Petitioner was not alone with S.M. in the home, and, as a result, Petitioner did not have the opportunity to assault S.M. with the frequency that S.M. alleged; and, second, that S.M. fabricated the abuse in retaliation for Petitioner disciplining her and for Petitioner and Soledad barring S.M.'s boyfriend at the time, Eric, from attending Petitioner and Soledad's wedding. In support of the defense, Petitioner's counsel presented the testimony of witnesses Phillip Stone (a friend of Petitioner's who would go to Petitioner's house during the weekdays and on the weekends to help Petitioner work on his car), J.R. (Petitioner's biological daughter, who also lived at Petitioner's home during the relevant time period), Vennitta Swinnie (Petitioner's neighbor for twelve years, who would visit Petitioner's home practically every day during the relevant time period), J.M. (Soledad's son from a previous relationship, who lived at Petitioner's home for some time during the relevant time period), M.R. (Petitioner's son from a previous relationship, who lived at Petitioner's home for some time during the relevant time period), Lucille Roy (Petitioner's employer for more than twenty years), and Soledad Reid (S.M.'s mother). A jury found Petitioner guilty on all three counts.

### B.    State Habeas Court's Findings of Fact and Conclusions of Law

Petitioner presented the same claims he presents here to the state court in his state application for habeas corpus relief. The state habeas court made the following findings of fact and conclusions of law:

1.    Applicant asserts that his trial counsel was ineffective in "opening the door" or failing to make objections to guilt phase testimony regarding Applicant's prior conviction for sexual assault.

2.    The record reflects that the issue of the trial court's rulings on the admission of this evidence was presented on direct appeal of this case. The Court of Appeals did not directly rule on the propriety of the trial court's rulings but rather determined that error was not preserved and/or the Applicant was not harmed by any potential error.

3.    In its answer, the State has appended a copy of its brief on direct appeal addressing the merits of the aforesaid issue. In reliance on the record, the State's brief on the merits, and the trial court's own recollection the trial court determines that its trial rulings on the admission of Applicant's prior conviction for sexual assault was proper under one or more theories of admissibility, and the trial did not violate discretion in admitting such evidence.

4.    The said evidence having been properly admitted, Applicant has failed to demonstrate harm in his counsel's failure to preserve error on these points, and thus has failed to demonstrate prejudice under the second prong of the *Stric[k]land* standard.

5.    Applicant asserts that upon the trial court ruling excluding testimony regarding a purported statement of the victim "to get" Applicant, his trial counsel was ineffective in failing to make an offer of proof on this testimony. Applicant has presented the affidavit of Venitta Swinney as to what such a proffer would contain.

6.    The court finds that the proffered testimony was violative of the rule against hearsay, was improper character impeachment evidence under Rule 404, and was further prohibited as opinion or reputation evidence of a victim's past sexual behavior under Rule 412.

7.    Accordingly, trial counsel's failure to make an offer of proof as to the proposed testimony of Ms. Swinney did not result in prejudice to Applicant, unde[r] the second prong of *Strickland*.

*Ex parte Reid*, Appl. No. 87,073-01 at 122-123. Based on its findings, the state habeas court recommended that the application be denied, and the Court of Criminal Appeals denied the application without written order.

### C.    Grounds One and Two

Grounds One and Two pertain to the admission of Petitioner's prior sexual abuse conviction during the defense's case in chief. A summary[3] of the testimony and the objections Petitioner's counsel made is as follows:

> During the defense's case-in-chief, Vennitta Swinnie testified that she had been Reid's next-door neighbor for twelve years. Over the years, she had gotten to know Reid and his family members, and her son became like "family" to the children living with Reid. The children would come to her house to visit after school, and she and her son would go to Reid's house to visit on a regular basis, "[e]very day basically." Swinnie stated that S.M. seemed to have a normal relationship with both her mother and Reid. Reid and S.M.'s mother also have a daughter together, and Swinnie said that she seemed to have a normal relationship with her parents. Swinnie did not observe any problems.

> Swinnie testified that in 2010 Reid and S.M.'s mother informed her of their wedding plans. She stated that she talked to S.M. about the plans. The State objected, however, when Reid's counsel sought to question Swinnie about whether she had heard any arguing between S.M. and someone else about the wedding and about whether S.M. had made any threats about bringing these charges. The trial court held a conference in chambers. During the conference, the State argued:

> Your Honor, just for expediency sake, I think that this witness has opened the door to the prior. She's saying she has a close relationship with him. She never saw anything wrong. She thought these people were family. I think we should be allowed to ask her, well, did he tell you he's a sex offender? He's a convicted sex offender. You were letting your kid go over there. And this is opinion testimony that he—she's close with him, that her kid goes over there, they're like family, they talked about her wedding. I think that opens the door to his prior and whether or not she knew about it, to test her opinion of him.

> Your Honor, also, the defense, in opening, said there's no opportunity. There's no opportunity for this offense because, um, there's always people there, they visitation [sic] all the time, I think is the word the defense is using. I think that opens the door to the prior where he's having—he's raping women with other people in the house, you know, when other people are asleep. So, I think it goes to opportunity, too. I mean, she's saying she's close with him. I think we should be able to say, well, did

---

[3] This summary is taken from the Tenth Court of Appeals' decision affirming Petitioner's conviction. *See Ex parte Reid*, Appl. No. 87,073-01 at 188-203.

he tell you he has a prior? He's a registered sex offender, Your Honor. He's registering at the address she lived next door to. And now she's coming here acting like he's—you know, he's a great dad.

The trial court stated, "I will lift the Order in Limine with regard to the prior conviction."

The State then began its cross-examination of Swinnie, during which the State asked her if she was aware that Reid was a convicted sex offender before this case. Reid objected: "Your Honor, at this time, the State [sic] would object under Rule 404(b). This is extraneous offense evidence that should not be—the defendant objects—defendant objects under 404(b) and, uh, under 403, the balancing test. The probative value does not outweigh the prejudicial effect." The trial court overruled the objection. Swinnie replied that she did not know that Reid was a convicted sex offender at the time but that she found out about it years later. Nevertheless, she did not think her son was at risk. The State then asked Swinnie what she knew about Reid's "prior"? Reid again objected: "Your Honor, we would re-urge the objection and ask for a running objection on this issue." The trial court overruled the objection but stated, "I will allow a running objection." Swinnie replied that she did not know anything about Reid's prior, but she then reiterated that it did not change her opinion as to whether her son was safe.

After Swinnie testified, S.M.'s brother, J.M., testified on cross-examination that he was aware that Reid was a registered sex offender but that he did not know very much about the prior case and that Reid had never talked to him about it. The State specifically questioned J.M. in part as follows:

Q So, were you aware that there was a houseful of people when he did those offenses?

A No, ma'am . . . .

Q Were you aware that there was [sic] multiple victims in the old case?

A No, ma'am, I was not.

. . . .

Q Um, were you aware that it had to do with defenseless drunk women that were passed out?

A No, ma'am, I didn't.

11

Reid did not object to this testimony by J.M.

Reid also did not object when the State then questioned his son [M.R.] extensively about the prior conviction. Only after [M.R.]'s testimony and a short recess did Reid's counsel state, "Your Honor, the defense moves for a mistrial at this time based on the highly prejudicial effect of the—" At that point, the trial court denied the request.

After an intervening witness, S.M.'s mother then also testified extensively about Reid's prior conviction during cross-examination by the State. The State questioned S.M.'s mother in part as follows:

Q Okay. What did the defendant tell you that he did?

A He told me—well, he didn't tell me, Ms. Finkinbinder put a flyer in my car seat when I was going through my divorce and letting me know what he had done.

Q Okay. So, have you talked to the defendant about his prior offense—

A Yes, I have.

Q —when he was 28 years old? And what did he say?

A He said that he was set up with two older girls about—you know, he got drunk and they set him up on it.

Q Okay. So now he was set up?

A Yes.

Q You're aware he had a jury trial?

A I was not there. I didn't know him at the time.

Q Have you talked about the offense with your husband?

A Yes.

Q The person you let around your children unsupervised?

A Yes.

Q And what did he tell you about the offense?

A He told me what had happened. He told me that he was set up with two girls that did it. And I talked to his probation officer from, uh, New York.

Q Okay. And—so you talked to his probation officer in New York; is that correct?

A Yes, because I had CPS called on me. And they come down there and questioned my kids about him living there. And [S.M.] was one of them there, too, when they questioned her about—about, you know, his past and stuff. And she knew the past.

Q And you were told at that point he was at a high risk to reoffend because he wouldn't take responsibility?

Only then did Reid "object to the relevance and the materiality of this line of questioning and to this specific question." Reid also re-urged his 404(b) and 403 objection. The trial court overruled the objections, and the State asked S.M.'s mother several more questions about the prior conviction.

Finally, after both sides rested and closed, Reid's counsel stated that he would "like to elaborate and re-urge the Motion for Mistrial and point out that the specific reason and basis for the Motion for Mistrial is that, uh, the extraneous offense evidence was allowed." Following a brief discussion, the trial court denied the request.

*Ex parte Reid*, Appl. No. 87,073-01 at 188-203. On appeal to the Tenth Court of Appeals, Petitioner argued that the trial court abused its discretion by admitting evidence of his prior sexual abuse conviction during the guilt-innocence phase of trial. Petitioner further argued that the trial court abused its discretion by admitting "backdoor hearsay" regarding Petitioner's alleged risk to re-offend.[4]

The Tenth Court of Appeals held that Petitioner forfeited his complaint as to J.M.'s, M.R.'s, and the unobjected-to portion of Soledad's testimony because Petitioner did not properly object pursuant to TEX. R. APP. P. 33.1(a)(1)(A). The Tenth Court of appeals further held that neither Petitioner's running objection nor his motion for mistrial preserved his complaint as to any of the

---

[4] Petitioner raised two additional grounds for relief pertaining to the punishment phase that are not relevant here.

testimony about his prior conviction. The Tenth Court of Appeals further held that because Petitioner forfeited his complaint as to J.M.'s, M.R.'s, and most of Soledad Reid's testimony by failing to make a proper complaint to the trial court, error (if any) in allowing the State to question Swinnie about Petitioner's prior conviction was cured even though Reid objected when the State questioned Swinnie about his prior conviction. The Tenth Court of Appeals further found that, in light of similar evidence being admitted without objection, the admission of the alleged "backdoor hearsay" evidence was harmless.

In Ground One of the instant federal habeas Petition, Petitioner alleges his trial counsel rendered ineffective assistance for opening the door to evidence of Petitioner's prior New York conviction for sexual abuse. In response, the Respondent argues that it was defense counsel's strategy to present the defenses of fabrication and lack of opportunity, and opening the door to the prior conviction was an unintended result of presenting those defenses. The Respondent further argues that trial counsel cannot be deficient for allowing the admission of extraneous-offense evidence when the trial court's admission of that evidence would be within the realm of reasonable disagreement.

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). To overcome the deference given to informed strategic decisions, a petitioner must show that his counsel "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Id.*; *see also Moore v. Johnson*, 194 F.3d 586, 615 (5th Cir. 1999) ("*Strickland* does not require deference to those

14

decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose.").

Due to the lack of physical evidence in this case, both the prosecution and defense relied almost exclusively on witness testimony to make their respective cases. From the perspective of Petitioner's defense counsel when preparing Petitioner's defense, two reasonable and available defense strategies were lack of opportunity and fabrication. A crucial component in proving these theories was to present witnesses who would testify that Petitioner was not alone with the S.M. and therefore did not have the opportunity to assault S.M. with the frequency she alleged. This strategy further required presenting witnesses who were close enough to Petitioner's family to have been around the house regularly and who also would have had specific knowledge that S.M. was untruthful.

Presenting such witness testimony required establishing the relationship between each witness and the Petitioner. Inherent in establishing the close relationship was the risk of inadvertently opening the door to extraneous acts testimony. It is clear from the record that Petitioner's counsel appreciated this risk and secured an order in limine prior to trial to suppress the extraneous-acts evidence. With the protective order in place, counsel proceeded to present witnesses testimony in support of Petitioner's defense.

Although defense counsel's direct examination of Swinnie's testimony resulted in the introduction of Petitioner's prior New York conviction, it cannot be said that counsel's decision to proceed down that path, given the risk, was deficient performance. Having independently reviewed the record from Petitioner's trial and appeal, the Court concludes that counsel balanced the limited defense options with the risk of putting the extraneous offense before the jury, and there was nothing

objectively unreasonable about the trial strategy adopted by Petitioner's trial counsel. Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities. *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

Petitioner relies on *Garcia v. State*, 308 S.W.3d 62 (Tex. App.–San Antonio 2009), in support of his claim that defense counsel was deficient. In *Garcia*, a Texas appellate court held that, by eliciting testimony from the defendant on direct examination broadly disclaiming that the defendant, who was on trial for aggravated sexual assault of a disabled person, had ever sexually assaulted someone and that he was a "law-abiding citizen," defense counsel rendered deficient performance by opening the door to defendant's prior extraneous offenses, including evidence of a prior, similar, sexual assault, a shooting in his home, and various alcohol-related offenses.

Garcia's counsel's line of questioning was significantly more broad and absolute than Petitioner's counsel's direct examination of Swinnie, and thus demonstrably more likely to open the door to the admission of a similar extraneous offense and other "bad acts" evidence. Thus, not only is *Garcia* factually distinguishable from this case, the Respondent has pointed to a number of cases where, under facts similar to this case, Texas courts have held that such conduct by counsel is not deficient performance. (Doc. 9 at 19-20). Thus, this Court finds that the state habeas court did not err in denying Petitioner's *Strickland* claim.

Moreover, and critically here, even a showing by Petitioner that the state habeas court's decision was incorrect is not enough under the § 2254 standard. Rather, Petitioner must show that the state habeas court's decision was *contrary to federal law then clearly established in the holdings of the Supreme Court of the United States*. *Williams v. Taylor*, 529 U.S. 362 (2000) (emphasis

supplied); *see also Richter*, 562 U.S. at 103 ("a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). Petitioner has failed to present Supreme Court precedent in direct conflict with the state habeas court's decision. Therefore, he has failed to demonstrate that no fairminded jurists could disagree that the state habeas court's decision conflicts with such precedent.

Respondent further argues that trial counsel cannot be deficient for allowing the admission of extraneous-offense evidence when the trial court's admission would be within the realm of reasonable disagreement. Respondent urges that the prior conviction was admissible under various theories of liability, including to rebut the defense of lack of opportunity and fabrication, and thus was within the realm of reasonable disagreement.

A trial court's decision to admit evidence is reviewed on appeal under an abuse of discretion standard. *See Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). The reviewing court considers whether the ruling is within the zone of reasonable disagreement. *See De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009). If the trial court was correct under any theory of law applicable to the case, the appellate court will uphold the trial court's ruling. *Bowley*, 310 S.W.3d at 434.

As a general rule, a defendant is not to be tried for collateral crimes or "for being a criminal generally." *See Segundo v. State*, 270 S.W.3d 79, 87-88 (Tex. Crim. App. 2008). At the guilt-innocence phase of the trial, extraneous offenses are not admissible to prove that a defendant acted in conformity with his character by committing the charged offense. *Id.* Evidence of other crimes or extraneous misconduct may be admissible to prove motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b); *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). Rebuttal of a defensive theory is a permissible purpose for which evidence may be admitted under Rule 404(b).[5] *Id*. Moreover, evidence offered by a party may be admitted when the other party "opens the door" to the otherwise inadmissible evidence. *Williams*, 301 S.W.3d at 687. Essentially, a party's attempt to leave a false impression with the jury effectively invites the response. *Hoyden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). However, even if a party opens the door to rebuttal evidence, the trial judge still has the discretion to exclude the evidence under Rule 403. *Id*.

In this case, the state habeas court found that the admission of Petitioner's prior New York conviction for sexual abuse was proper under one or more theories of admissibility, and the trial court did not violate discretion in admitting such evidence. Based on that finding, the state habeas court concluded that Petitioner's claim fails under *Strickland*.

Upon thorough review of the record in this case and the relevant law, this Court finds that state law supports the admission of the extraneous offense testimony to rebut the defenses Petitioner's counsel advanced at trial, and, at the very least, the trial court's decision to admit the evidence was within the zone of reasonable disagreement. Thus, this Court agrees with the state habeas court's conclusion that counsel was not ineffective under *Strickland*.

Moreover, although Petitioner and Respondent have each presented cogent, well-supported arguments post-trial as to the admissibility and inadmissibility of the prior sexual abuse conviction,

---

[5] *See generally Bass v. State*, 270 S.W.3d 557, 558, 563 (Tex. Crim. App. 2008) (Defensive theory that pastor "was 'the real deal and the genuine article' and that teenager's allegations were pure fantasy" was subject to rebuttal by State's extraneous offense evidence of pastor's having sexually assaulted two other girls in his church office); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (Extraneous offense evidence had non-character conformity relevance where it served to rebut appellant's defensive theory that he had no opportunity to commit the offense because he was never alone with the complainant).

admissibility is not the question before this Court. Rather, the dispositive question on federal habeas review is whether the state habeas court's conclusion–that Petitioner has failed to meet his burden of demonstrating ineffective assistance under *Strickland*–was an unreasonable application of the holding in *Strickland*. In order to prevail, Petitioner must demonstrate that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with Supreme Court precedent. Petitioner has failed to present Supreme Court precedent in direct conflict with the state habeas court's decision. Therefore, he has failed to demonstrate that no fairminded jurists could disagree that the state habeas court's decision conflicts with such precedent, and his Ground One is without merit.

In a second, related ground for relief, Petitioner alleges that, to the extent trial counsel did not open the door to the introduction of the prior New York conviction, counsel nevertheless rendered ineffective assistance for failing to preserve the 404(b) and 403 objections to the evidence by fully objecting each time the extraneous offense evidence was presented. In support of his claim, Petitioner submitted the affidavit of one of his trial attorneys, J. Scott Peterson. In the affidavit, Peterson states:

> The testimony regarding the New York conviction and the details surrounding that offense were very prejudicial in this case. I believe the trial would have ended differently without this evidence as there was no physical evidence against Mr. Reid, there were several witnesses who challenged the veracity and truthfulness of the complainant, and there was evidence as that the allegations arose after Mr. Reid informed the Complainant that her boyfriend would not be invited to his wedding, thus giving the complainant a motive to lie.

(Doc. 2-1, Attach. D). As discussed previously, the state habeas court found that the Petitioner's prior conviction was admissible under one or more theories of admissibility, and the trial court did not violate discretion in admitting such evidence. Because the evidence was properly admitted, the

state habeas court reasoned, Petitioner cannot demonstrate harm in his counsel's failure to preserve error on these points, and therefore Petitioner failed to demonstrate prejudice under the second prong of the *Strickland* standard.

Consistent with the state habeas court's opinion, Respondent argues that the extraneous-offense evidence was admissible under various theories of admissibility, therefore, an objection to the admission of the evidence would have been futile. Because admission of the evidence was within the zone of reasonable disagreement, Respondent maintains that trial counsel was not ineffective for failing to continue to object to the discussion of the prior conviction.

As mentioned previously, state law supports the admission of the extraneous-offense testimony to rebut the defenses Petitioner's counsel advanced at trial. Therefore, this Court agrees with the state habeas court's conclusion that counsel was not ineffective under *Strickland* for failing to preserve the objections for appeal.

It is again worth re-iterating here that the dispositive question on federal habeas review is not whether the evidence was properly admitted. It is also not whether the state habeas court's decision finding that Petitioner failed to establish ineffective assistance under *Strickland* was correct because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102 (citation omitted). Rather, the question is whether the state court's finding was unreasonable. Here, it was well within the bounds of a reasonable judicial determination for the state court to conclude that defense counsel's conduct did not run afoul of *Strickland*. For these reasons, Petitioner fails to establish ineffective assistance under *Strickland* as to Ground Two.

20

### C.    Ground Three

In his final ground for relief, Petitioner argues that his trial counsel was ineffective for failing to make an offer of proof when the trial court would not allow Swinnie to testify as to alleged threats S.M. purportedly made to "get" Petitioner.

During defense counsel's cross-examination of Swinnie, counsel sought to question Swinnie about whether S.M. had ever made threats about bringing charges against Petitioner. 4 RR 51.[6] The state's attorney made a hearsay objection, and Petitioner's attorney responded as follows:

> I just want something on the record, if I'm allowed. I want this to be–be on the record that, uh, my recollection is, from the testimony of Stacie Milliman, that she said that she, uh–that the barring of Eric from the wedding had nothing to do with the charges that she's brought, and that this witness would testify directly against that by saying that's not true, that Staci said, I'm going to get back at Jimmy because she's barred Eric from the wedding. And it's my understanding from what the Court's admonishment is, the Motion in Limine, that I'm not allowed to get into it, so I'm not gonna get into it. I'd like the record to reflect that. So, we're ready to proceed, Your Honor.

4 RR 54. The court did not allow the defense to present the testimony.

Petitioner argues that, upon this refusal, defense counsel should have explained to the court that the testimony was not hearsay or that it met an exception to the hearsay rule. Further, Petitioner argues that defense counsel should have but failed to make an "offer of proof" as to Swinnie's proposed testimony. In support of his claim, Petitioner includes an affidavit from Swinnie stating that Swinnie would have testified as follows:

> Shortly before S.M. stopped living at the home of Mr. and Mrs. Reid, she snuck over to my house during a time she was being disciplined for dating her boyfriend Eric. She told me that, if Mr. Reid and Soledad were not going to let her be happy, they were not going to be happy. Referring to Mr. Reid, I distinctly remember her saying, "I am going to get that hoe a** ni**er.

---

[6]  4 RR 51 indicates volume four of the reporter's record at page fifty-one.

(Doc. 2-1, Attach. C). Petitioner argues that, had counsel made a proper "offer of proof" regarding S.M.'s "threat" to get Petitioner and ruin his happiness, and had the trial court allowed the jury to hear this testimony, there is a reasonable probability that the verdict would have been different in this case or the case would have been reversed on appeal.

In response, Respondent argues that defense counsel did in fact lay the proper predicate when he asked Swinnie whether or not the fact that Eric was barred from the wedding had anything to do with the charges that S.M. brought in this case. In the alternative, Respondent argues that the proffered testimony was cumulative to other testimony presented at trial, therefore, to the extent this Court finds that counsel's attorney failed to properly make an offer of proof, Petitioner cannot show harm under *Strickland*. Respondent also argues that the testimony Petitioner alleges counsel should have preserved was inadmissible under several theories of evidence.

The state habeas court found that the "proffered testimony was violative of the rule against hearsay, was improper character impeachment evidence under Rule 404, and was further proibited as opinion or reputation evidence of a victim's past sexual behavior under Rule 412." *Ex parte Reid*, Appl. No. 87,073-01 at 123. Thus, the state habeas court concluded that trial counsel's purported failure to make an offer of proof as to the proposed testimony of Swinnie did not result in prejudice to Petitioner under the second prong of *Strickland*.

Although Petitioner argues vigorously that trial counsel did not lay the proper predicate, that the testimony was not cumulative, and that the testimony was not excludeable as character evidence because threats are excepted from the rule excluding hearsay, admissibility is not the relevant question here. The question is whether the state habeas court's decision was the result of an unreasonable application of federal law.

22

Relying on *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), and *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974), Petitioner argues that the state court's habeas determination on this issue was contrary to clearly established federal law because the Sixth Amendment to the United States Constitution provides the right of a criminal defendant to present impeachment evidence related to the bias of a witness against the defendant. *See* Doc. 2-1 at 32-33. However, the aforementioned decisions do not compel a finding that Petitioner was denied the right to be confronted with the witnesses against him, nor does it compel a finding that counsel was ineffective for failing to make the proper offer of proof as to Swinnie's proposed testimony. As such, this Court cannot say that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Accordingly, Petitioner's Ground Three is without merit.

Petitioner has failed to meet his burden under the AEDPA, and his federal Application should be denied.

## CERTIFICATE OF APPEALABILITY

The Court now must consider whether to issue a certificate of appealability ("COA"). A COA may issue only if Petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

A district court may deny a COA, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons discussed above, Petitioner

cannot show that jurists of reason would find it debatable whether his petition states a valid claim of the denial of a constitutional right. The Court, therefore, denies issuing a COA.

For the foregoing reasons, it is

**ORDERED** that Petitioner's Application for federal writ of habeas corpus is **DENIED**. It is further **ORDERED** that the issuance of a COA is **DENIED**.

**SIGNED** on March 22, 2018.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE